Ms. Amy Sherrill, Reporter Southwest Times Record 3600 Wheeler Avenue Fort Smith, Arkansas 72901
Dear Ms. Sherrill:
I am writing in response to your request, made pursuant to A.C.A. §25-19-105(c)(3)(B), for an opinion on whether the decision of the Greenwood School District in response to your request to review a former employee's personnel file is consistent with the Arkansas Freedom of Information Act ("FOIA"). See A.C.A. §§ 25-19-101 — 10 9 (Repl. 2002 and Supp. 2007). Specifically, you state that on November 20, 2007 you sent a Freedom of Information Act request to the Greenwood School District superintendent requesting the personnel file of a former school teacher/coach in the District. Your request letter sought the personnel records of the former employee and "any compilation of records that led to his resignation." You assert that the employee was "forced to resign." You state that the "school replied to [y]our request and said it would hand over the records if [the former employee] did not seek an opinion of the Attorney General." Specifically, the District responded by stating that "[i]t appears the items you requested are exempt under A.C.A. §25-19-105(c)(1)" (exempting certain employee evaluation and job performance records). The District also stated, however, that "prior to a final decision," it was notifying the former employee so that he would have an opportunity to seek an Attorney General's opinion regarding the matter. The District stated that if the employee did not request an opinion by close of business December 3, 2007, it would provide you with the requested information. You state that the employee has not sought an Attorney General's opinion under A.C.A. § 25-19-105(c)(3)(B), but that a state representative requested an opinion under a more general statute, A.C.A. § 25-16-706, which requires me to render *Page 2 
official opinions to certain state officials on questions of law pertinent to their duties.[1] As the requester of the records in question, you now seek my opinion under A.C.A. § 25-19-105(c)(3)(B), and ask that I address the following questions within the three-day time frame of that statute:
 Should the school district release the records since neither [the former employee] nor the school asked for an opinion of the Attorney General?
 Also, are the personnel records of a public employee who was forced to resign open to public inspection?
RESPONSE
My statutory duty under A.C.A. § 25-19-105(c)(3)(B) is to determine whether the decision of the custodian of records is consistent with the FOIA. See A.C.A. § 25-19-105(c)(3)(B)(i) (Supp. 2007). I am not authorized to address specific questions posed by the custodian, subject or requester. See Op. Att'y Gen. 2006-071. I must therefore decline to specifically address the two questions you pose. In this instance, however, I cannot determine what substantive decision the custodian has made with regard to release of the records. Initially, the custodian states that the records "appear . . . exempt under A.C.A.25-19-105(c)(1))," but also states that it is "prepared to release the information after [the former employee] has had a reasonable time to seek clarification. . . ." I am thus somewhat uncertain what substantive decision the custodian has made. In addition, I have not been provided with the records in question. I am thus constrained in determining whether the custodian's decision is consistent with the FOIA. I am able to say, however, in my opinion it is inconsistent with the FOIA for a custodian to state, in response to an FOIA request, that all employment records of an employee or former employee will be released unless the subject requests an Attorney General's opinion. At least some items in a personnel file are typically shielded from public inspection and copying. The custodian must review the records in order to properly classify each, and to apply the applicable tests under the FOIA to determine which records are public or exempt, and whether any redactions are required. The custodian must inform the requestor and subject of the records of the decision, taking care of *Page 3 
course not to reveal any exempt information in so doing. This procedure is discussed more fully below.
In addition, the issue of whether the employee was "terminated" for purposes of A.C.A. § 25-19-105(c)(1) is one of fact. I am not empowered as a fact-finder in the issuance of Attorney General opinions. I have previously stated, in the context of the FOIA, that "only the custodian of records can make the threshold determination of whether a resignation constitutes a constructive termination." Op. Att'y Gen. 2007-061. The custodian's determination in that regard is of course subject to judicial review. See, e.g., 25-19-105(c)(3)(C) (Supp. 2007).
DISCUSSION
Several procedural matters must be discussed prior to addressing the substantive applicability of the FOIA to the facts at hand. First, the applicable statute unambiguously requires the custodian of records, upon receiving a request for personnel or evaluation records, to "determine within twenty-four (24) hours of the receipt of the request whether the records are exempt from disclosure. . . ." A.C.A. § 25-19-105(c)(3)(A) (Supp. 2007). The custodian must therefore make a decision as to which portions of the records are open to inspection and copying and which portions are exempt. This requires a document-by-document review of the actual records in question, in order to determine which portions are public, and what necessary redactions must be made. Consultation with legal counsel is often necessary or advisable in arriving at the custodian's determination in this regard. Reference must be made to the exemptions listed in the FOIA and any other possibly pertinent exemptions elsewhere in state or federal law, which might exempt particular requested documents in possession of the custodian. The custodian must thereafter notify the requester and the subject of the records of thedecision reached and inform them of the extent to which the requested records are exempt, taking care of course not to reveal the nature of any exempt information in the file. The requester, custodian, or subject of the records may at that point request the opinion of the Attorney General on whether the custodian's decision is consistent with the FOIA. If this optional procedure is invoked, no records may be released until the Attorney General issues his opinion. A.C.A. § 25-19-105(c)(3)(B)(ii). The Attorney General must respond within three working days. See A.C.A. §25-19-105 (c)(3)(B)(i).[2] *Page 4 
In this instance, it does not appear from the facts you relay that the custodian has made a final substantive decision as to which portions of the requested records are open to inspection and copying and which portions are exempt. The District replied that it appeared that the "items . . . requested [were] exempt," but nonetheless stated that it would hand over the documents unless the employee requested an Attorney General's opinion. Most employment records of public employees or former employees require at least some redactions for social security numbers, date of birth, tax information, etc. In my opinion, therefore, it is in all likelihood inconsistent with the FOIA for the custodian to respond in a blanket fashion that the requested records are available in the absence of a request for an Attorney General's opinion. Again, the custodian must review the requested documents in detail, and make the initial determination as to which portions are available for inspection and copying, and which portions must be shielded under applicable law.
With those procedural issues addressed, I may know turn to the substantive provisions of the FOIA.
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005). Given that the subject of the records is a former school district employee, I believe documents containing the requested information clearly qualify as "public records" under this definition. *Page 5 
As one of my predecessors noted in Op. Att'y Gen. No. 1999-305, "If records fit within the definition of `public records' . . . they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." Id. at 2.
A "personnel file" of a public employee will typically include "personnel records" as well as "employee evaluations or job performance records" for purposes of the FOIA. See, e.g., Op. Att'y Gen. 2005-011. Different tests for the release of records apply to these two categories. Custodians should ensure the proper classification of each document within the personnel file in order to apply the proper test relating to each category of record. While I am unable to reach a definitive answer without copies of the records in question, I will set forth the applicable test that should be considered in these circumstances.
Personnel Records
Although the FOIA does not define the term "personnel records," as used therein, this office has consistently taken the position that "personnel records" are any records other than employee evaluation/job performance records that relate to the individual employee. Op. Att'y Gen. 2006-071. Personnel records must be released unless their disclosure would constitute a "clearly unwarranted invasion of [the employee's] personal privacy." A.C.A. § 25-19-105(b)(12). The FOIA does not define the phrase "clearly unwarranted invasion of personal privacy." However, the Arkansas Supreme Court has construed the phrase. In determining which disclosures constitute a "clearly unwarranted invasion of personal privacy," the court applies a balancing test. The court will weigh the interest of the public in accessing the records against the individual's interest in keeping the records private. See Young v. Rice, 308 Ark. 593,826 S.W.2d 252 (1992).
If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy." The court in Young noted the following in this regard:
 The fact that section 25-19-105(b)(10) [now subsection 105(b)(12)] exempts disclosure of personnel records only when a clearly unwarranted personal privacy invasion would result, indicates that certain `warranted' privacy invasions will be *Page 6 
tolerated. Thus, section 25-19-105(b)[(12)] requires that the public's right to knowledge of the records be weighed against an individual's right to privacy. . . . Because section 25-19-105(b)[(12)] allows warranted invasions of privacy, it follows that when the public's interest is substantial, it will usually outweigh any individual privacy interests and disclosure will be favored.
Young, 308 Ark. at 598.
If there is little public interest in information, however, the privacy interest will prevail if it is not insubstantial. See Stilley v.McBride, 332 Ark. 306, 965 S.W.2d 125 (1998). Additionally, given that exemptions from disclosure must be narrowly construed, see, e.g., Orsiniv. State, 340 Ark. 665, 13 S.W.3d 167 (2000), it is the burden of an individual resisting disclosure to establish that his "privacy interests outweighed that of the public's under the circumstances presented."Stilley, supra, 332 Ark. at 313.
Because I have not reviewed any of the documents responsive to the request, I cannot determine whether they are properly classified as "personnel records," or offer a definitive opinion as to their exempt status. In Op. Att'y Gen. 2006-048, my immediate predecessor listed a number of documents that were subject to release under the above test for personnel records. He enumerated items that are typically subject to release as including: public employees' names, dates of hire, job titles and salaries; amounts paid for accrued leave; education backgrounds, including schools attended and degrees received; work histories; work e-mail addresses; attendance and leave records; payroll forms documenting leaves of absence; documents related to any compensation a former employee receives in addition to their regular paycheck; contracts or agreements related to an employee's separation from employment; internal affairs notification documents; notice of personnel action; job applications; resumes, including references; and letters of recommendation.
On the other hand, my predecessor concluded, and I agree, that the public generally has little interest in the personal details of the following information: insurance coverage; tax information or withholding; payroll deductions; banking information; marital status of employees and information about dependents; personal e-mail addresses; unlisted telephone numbers; social security numbers; and date of birth. My predecessor also noted the specific exceptions for state *Page 7 
income tax records (A.C.A. § 25-19-105(b)(1) (Supp. 2005)). He also mentioned photocopies of drivers' licenses and social security cards as being exempt. Id. at 4.
Again, having not reviewed the records in question, I cannot address all of the potential items that might need to be redacted under the "personnel records" exemption. The custodian of the records must review each document and make the initial determination as to whether it is subject to release under this test and whether any appropriate redactions are required.
Employee evaluation or job performance records
With regard to "employee evaluation or job performance records," again, the FOIA does not define this term, nor has the phrase been construed by the Arkansas Supreme Court. This office has consistently taken the position that any records that were created by or at the behestof the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ops. Att'y Gen. 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; and 93-055. The record must also have been created for the purpose of evaluating an employee. See, e.g., Op. Att'y Gen. 2006-038; and 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (m m Press, 4th ed. 2004) at 196.
In my opinion, documents created by or at the behest of supervisors such as written reprimands and letters of caution, documents supporting a recommendation for suspension or dismissal, letters related to promotions and demotions, and records that were generated as part of an investigation of allegations of the misconduct and that detail incidents that gave rise to such allegations generally fall within the category of "employee evaluations or job performance records." See, e.g., Ops. Att'y Gen. 2006-035; 2003-078; 2001-203; 99-147; 93-105; 93-055; 92-231; and 91-324.
"Employee evaluation or job performance records" are releasable only if the following three conditions have been met: *Page 8 
 1. There has been a final administrative resolution of any suspension or termination proceeding;
 2. The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 3. There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1). Employee evaluation or job performance records cannot be released unless each prong of this test has been met.
With regard to the first prong, my predecessors and I have stated that "a voluntary resignation in the face of a disciplinary challenge does not equate to a suspension or termination." See, e.g., Ark. Ops. Att'y Gen. Nos. 2007-061; 2006-038; 2006-035; 2005-094; 2005-032; 2005-030; 2004-219; 2002-235; 2001-246; 1998-188; 1997-063. On the other hand, other previous opinions of this office leave open the possibility that a coerced resignation might amount to a constructive termination. One of my predecessors has acknowledged that under certain facts, "a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A § 25-19-105(c)(1)." The issue is a question of fact in each instance. I am not a fact-finder in the issuance of Attorney General's opinions, and as a consequence, cannot determine whether the former employee in question was "terminated" for purposes of the A.C.A. §25-19-105(c)(1). I have previously stated that "only the custodian of records can make the threshold determination of whether a resignation constitutes a constructive termination." Op. Att'y Gen. 2007-061.
If, as a factual matter, there was a "termination" for purposes of the first prong of the test above, the remaining prongs must be met before any properly classified "employee evaluation or job performance records" are subject to release. The records in question must have "formed a basis" for the termination, all administrative appeals must be final, and there must be a "compelling public interest in disclosure."
The FOIA at no point defines the phrase "compelling public interest" as used in the final prong of the test for disclosure set forth in A.C.A. § 25-19-105(c)(1). *Page 9 
However, as stated in Op. Att'y Gen. 2007-013, Professors Watkins and Peltz, referring to this office's opinions on this issue, offer the following guidelines:
 [I]t seems that the following factors should be considered in determining whether a compelling public interest is present: (1) the nature of the infraction that led to suspension or termination, with particular concern as to whether violations of the public trust or gross incompetence are involved; (2) the existence of a public controversy related to the agency and its employees; and (3) the employee's position within the agency. In short, a general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present. However, a link between a given public controversy, an agency associated with the controversy in a specific way, and an employee within the agency who commits a serious breach of public trust should be sufficient to satisfy the "compelling public interest" requirement.
Watkins and Peltz, The Arkansas Freedom of Information Act (m m Press, 4th ed. 2004) at 207 (footnotes omitted). The existence of a "compelling public interest" in disclosure will necessarily depend upon all of the surrounding facts and circumstances.
Exemptions under other laws
Finally, I must note that in addition to determining whether the records contained in the requested personnel file are exempt from disclosure under either the exemption for "personnel records" or "employee evaluation/job performance records," as discussed above, the custodian of the records must also review the records in the file to determine whether they fall within any other exemption in Arkansas or federal law. The FOIA sets forth a list of specific exemptions from disclosure in A.C.A. § 25-19-105, including exemptions for medical records and certain educational records. See A.C.A. § 25-19-105(b)(2). The FOIA also provides that records can be withheld under exemptions that are specifically stated in other laws outside the FOIA. See A.C.A. §25-19-105(a)(1)(A) ("Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open. . . ."). (Emphasis added). This is the so-called "catch-all" exemption. See Op. Att'y Gen. 2006-048. In many cases, *Page 10 
therefore, documents in a personnel file may be protected from public disclosure by statutes outside the FOIA, notwithstanding that they would be available under the test for the release of personnel or evaluation records. See, e.g., Ops. Att'y Gen. 2005-194 (federal Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 through-2725 prohibits disclosure of drivers' license information in certain instances); 2006-182 (A.C.A. § 12-12-211 prohibits disclosure of Arkansas Crime Information Center ("ACIC") information appearing in background investigation records of police officers); and 2006-189 (A.C.A. § 12-12-506 and 9-27-352 require central registry information obtained pursuant to the Child Maltreatment Act and information regarding proceedings under the Juvenile Code to be excised from any otherwise open personnel or job performance records prior to such records' release). Again, the custodian must consider the applicability of all potential exemptions, whether contained in the FOIA or elsewhere in state or federal law.
CONCLUSION
Having not reviewed the actual records in question, I cannot determine whether, or to what extent the records you have requested are subject to inspection and copying under the FOIA. Additionally, as noted above, I cannot determine the factual issue of whether the employee in question was "terminat[ed]" for purposes of A.C.A. § 25-19-105(c)(1). I can state, however, that a blanket reply by the custodian that all records in a personnel file will be released unless the employee asks for an Attorney General opinion, is likely inconsistent with the FOIA. The custodian is required to review each document in the file to determine its public or exempt status, and to determine what, if any, redactions are necessary.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] This request was subsequently withdrawn.
[2] This procedure is distinct from the opinions requested under A.C.A. § 25-16-706. That statute requires the Attorney General to give his opinion to certain state officials on matters of state law pertinent to their duties. An opinion requested by a state official under A.C.A. § 25-16-706 does not toll a custodian's statutory obligation to respond to an FOIA request.